SO ORDERED.

SIGNED this 3rd day of February, 2016.



Dale L. Somers
United States Bankruptcy Judge

Designated for on-line use but not print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| In Re:<br><br>ARNOLD RAY THOMAS and<br>SHELLY MARIE THOMAS,<br><br>　　　　　DEBTORS. | CASE NO. 14-12646<br>CHAPTER 7 |
|---|---|
| J. MICHAEL MORRIS, Trustee,<br><br>　　　　　PLAINTIFF,<br><br>v.<br><br>SIGG FINANCIAL SERVICES, LLC<br>and SIGG MOTORS #1, LLC,<br><br>　　　　　DEFENDANTS. | ADV. NO. 15-5021 |

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT

In this adversary proceeding, J. Michael Morris, the Chapter 7 Trustee of Debtors Arnold and Shelly Thomas, seeks to set aside under 11 U.S.C. § 544(a) and preserve for the benefit of the estate under 11 U.S.C. § 551, an allegedly unperfected lien in Debtor's 2006 Chevrolet Impala, the purchase of which was financed by Defendant Sigg Financial Services, LLC. A default judgment was entered on May 11, 2015. Defendants filed their Motion to Set Aside Default Judgment on May 30, 2015. Trial on the motion to set aside, as well as the merits of the lien perfection issue, was held on August 18, 2015. Plaintiff appeared by J. Michael Morris. Defendants appeared by David A Clark. The Court has jurisdiction.[1]

**FINDINGS OF FACT.**

On September 16, 2014, Arnold Thomas (Debtor) purchased a 2006 Chevrolet Impala, hereafter Vehicle, from Sigg Motors, located in Iola, Kansas. The purchase was financed by Defendant Sigg Financial, also located in Iola, Kansas. Debtor granted Sigg Financial a security interest in the Vehicle. As a part of the sales transaction, a Notice of Security Interest (NOSI) was prepared, signed by Debtor and Sigg Financial Services, and mailed to the Kansas Department of Revenue two or three days later. Sigg Financial

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). There is no objection to venue or jurisdiction over the parties.

received from the Kansas Department of Revenue a letter regarding the Vehicle stating, "This letter is to inform you that a security interest was perfected against the record of the vehicle listed above executed on 10/17/2014."[2] The letter also states, "Lien Perfected Date (Transaction Date): 10/17/2014."[3]

Debtors filed for relief under Chapter 7 on November 26, 2014. Schedule D lists Sigg Financial as the only secured creditor. Ron Sigg, who is not an attorney, handles bankruptcy and collection matters for Defendants, including the filing and prosecution of many limited action proceedings. He is an employee of Defendants, has no ownership interest in the Defendants, and is not related to the owners, John M. Sigg and his father Mitch Sigg. Ron Sigg testified that upon receiving notice of the bankruptcy filing he sent a proposed reaffirmation agreement and enclosed a copy of the NOSI. A copy of the letter was not offered as an exhibit at trial.

J. Michael Morris was appointed Chapter 7 Trustee. He reviewed the electronic title records of the Kansas Department of Revenue and found no record of the NOSI. On January 26, 2015, the Trustee sent a letter to Sigg Financial asserting that Sigg Financial's lien on the Vehicle was unperfected as of the date of filing and demanding acknowledgment that the lien was unperfected and therefor avoided for the benefit of the bankruptcy estate. Ron Sigg received the letter, examined Sigg Financial's records, and

---

[2] Exh. E.

[3] *Id.*

determined that the lien was perfected. He therefore did not respond to the Trustee's letter.

The Trustee filed the Complaint to Avoid and Preserve Unperfected Security Interest on February 19, 2015. On February 25, 2015, the summons and Complaint were served on John M. Sigg, as resident agent for Sigg Financial and Sigg Motors, by first class mail. In accord Sigg Financial's practices, the Complaint was forwarded to Ron Sigg. He discussed it with Mitch Sigg. Ron Sigg did not regard the summons as giving notice of a lawsuit because it was served by first class mail, rather than by process server or certified mail, the manners of service with which he was familiar. The summons states that "if you fail to respond to this summons, your failure will be deemed be your consent to entry of a judgment by the bankruptcy court and judgment by default may be taken against you."[4] Nevertheless, Ron Sigg chose to do nothing because in his opinion Sigg Financial had a perfected lien and he did not look at the summons and complaint as a lawsuit.

Connie Wolken also testified. She is employed by Sigg Motors and Sigg Financial as title clerk and prepared the sale documents, including the September 16, 2014 security agreement and NOSI. After the sale transactions, Debtor Arnold Thomas came to Connie Wolken because he desired to add a name to the Vehicle title. Sigg Financial therefore executed a lien release dated December 2, 2014.[5] A new title was issued listing Sigg

---

[4] Exh. 3.

[5] Exh. 11.

Case 15-05021    Doc# 24    Filed 02/03/16    Page 4 of 9

Financial as lien holder. The Title and Registration Receipt issued by the Kansas Department of Revenue show a transaction date of December 19, 2014.[6]

On May 5, 2015, the Clerk of the Bankruptcy Court entered a Clerk's Entry of Default against Defendants in accord with Federal Rule of Civil Procedure 55(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7055. On May 7, 2015, the Trustee filed his motion for default judgment against Defendants Sigg Motors and Sigg Financial. The order granting the default judgment was filed on May 11, 2015. It grants judgment against Defendants avoiding their lien on the Vehicle pursuant to 11 U.S.C. § 544(a), preserving the lien for the benefit of the estate pursuant to 11 U.S.C. §551 and also granting a $350 judgment for costs against the Defendants, jointly and severally.

**DISCUSSION.**

    **A. The Rule 60(b)(1) standard.**

Defendants seek to set aside the default judgment under Federal Rule of Bankruptcy Procedure 7055, which incorporates Federal Rule of Civil Procedure 55(c). It provides: "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Defendants rely on subsection (1) of Rule

---

[6] Exh. F.

5

Case 15-05021    Doc# 24    Filed 02/03/16    Page 5 of 9

60(b), which provides that upon motion and just terms the court may set aside a judgment for the reasons of "mistake, inadvertence, surprise, or excusable neglect."[7]

Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when "a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) whe[n] the judge has made a substantive mistake of law or fact in the final judgment or order."[8]

> The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." " '[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable.' "[9]

If the movant satisfies the burden of demonstrating excusable neglect, then he also has the burden of showing a meritorious defense.[10]

---

[7] In their motion, Defendants also cited subsection (3), providing a judgment may be set aside for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." No evidence was offered to support this allegation and Defendants did not otherwise pursue this ground. It is therefore deemed to have been waived.

[8] *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 722-23 (10th Cir. 2008) (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir.1996)).

[9] *Jennings v. Rivers*, 394 F.3d 850, 856-57 (10th Cir. 2005) (citations omitted).

[10] *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011). If the Sigg parties had shown excusable neglect, the Court would set aside the default because Defendants have also shown that they have a meritorious defense. As stated above, trial was held on the merits of the Trustee's motion for lien avoidance. In order to prevail on his claim of avoidance under § 544(a), the Trustee must show that the lien on the Vehicle was not perfected on November 26, 2014, the date the bankruptcy was filed.

### B. Defendants' conduct does not satisfy the definition of excusable neglect.

The definition of excusable neglect has been addressed by the Tenth Circuit Court of Appeals.

> "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which failure to comply with a ... deadline is attributable to negligence. More generally, "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect to a matter, or . . . 'to leave undone or unattended to *esp[ecially] through carelessness*.' The word therefore encompasses both simple faultless omissions to act and, more commonly, omissions caused by carelessness.[11]

But excusable neglect does not include mistakes "that were the result of a deliberate and counseled decision by the complaining party . . .. Thus, a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes."[12]

---

The Vehicle was sold to Debtor on September 16, 2014. On that date, a Notice of Security Interest was completed. It was mailed to the Department of Revenue two or three days later, thereby perfecting the lien in accord with K.S.A. 2014 Supp. 8-135(c)(5). The Department of Revenue provided notice to Sigg Financial identifying the Vehicle and stating that "a security interest was perfected against the record vehicle listed above executed on 10/17/2014." Exhibit E. states: "Lien Perfected Date (Transaction Date): 10/17/2014." It appears to the Court that this date may be a typographical error, since the evidence conclusively establishes that the sale date was 9/16/2014. But since the critical date is November 26, 2014, the presence or absence of this possible error is not material. The release of the purchase lien to facilitate the Debtor's desire to add a name to the certificate of title did not occur until December 2, 2014, after Debtors filed their bankruptcy petition on November 26, 2014. Thereafter a new title was issued showing Sigg Financial's lien. This is the reason why the Department of Revenue Records when examined by the Trustee in January 2015 showed a lien perfection date of January 7, 2015 and the absence of a NOSI.

[11] *Jennings v. Rivers*, 394 F.3d at 856 (citations omitted).

[12] *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) (citations omitted).

7

The court finds that Defendants' neglect was not excusable as so defined. Ron Sigg, to whom Defendants delegated the responsibility to review and respond to matters received from the bankruptcy court, acted deliberately when failing to respond to the Trustee's demand letter and to the summons, thereby providing the basis for the default judgment. He had two reasons for not filing a response to the Complaint. First, he erroneously concluded that a response was not necessary because the summons was served on Defendants by first class mail, rather than by process server or registered mail. Second, he erroneously concluded that a response was not necessary because Defendants' records included evidence of perfection of their security interest in the Vehicle. Ron Sigg misunderstood the legal consequences of service by mail and the need to respond.

**C. Given the nature of Defendants' conduct, the Court finds the other relevant factors insufficient to support relief.**

The Court turns to consideration of the additional relevant factors stated above. In this case there is minimal prejudice to the Trustee, as he reported that in reliance on the default he has negotiated with the Debtor to purchase the Vehicle. The delay between the entry of the default judgment and the motion to set aside was less than two weeks. Sigg Financial acted in good faith.

But "fault in the delay [is] a very important factor—perhaps the most important single factor—in determining whether neglect is excusable."[13] The failure to timely respond was controlled solely by the Defendants. The "do nothing" response to the

---

[13] *Jennings v. Rivers*, 394 F.3d at 856 (quoting *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)).

Complaint was the same as the "do nothing" response to the Trustee's demand letter. The default was the result of Ron Sigg's determination that no response was needed because of improper service and lack of merit on the lien avoidance question. At trial Ron Sigg demonstrated indifference bordering on contemp toward the Trustee's demand letter and the Court's summons. A reasonable person, particularly a reasonable person employed to manage collections for the financing arm of a car dealership, would have responded to the demand and the summons. The decision is harsh, but it is not grounded on a mere technicality. The just and equitable functioning of the bankruptcy system is predicated upon the rule of law where defenses to claims are determined by the Court, not by the defendant. To set aside the default judgment under the circumstances of this proceeding would sanction disregard for the judicial process. The nature of the Defendants' conduct requires denial of the motion to set aside; the additional relevant factors which favor granting of the motion simply cannot overcome the effect of inexcusable conduct.

**CONCLUSION.**

For the foregoing reasons, the Court denies Defendants' motion to set aside default judgment.

**IT IS SO ORDERED.**

###